**Robert TAYLOR, Appellee,**

v.

**FREELAND & KRONZ;  Wendell G. Freeland;  Richard F. Kronz, Appellants.**

**No. 90–3696.**

United States Court of Appeals, Third Circuit.

Argued Feb. 28, 1991.

Decided July 8, 1991.

Gary W. Short (argued), Pittsburgh, Pa., for appellee.

Kenneth P. Simon, Phillip S. Simon (argued), Simon & Simon, Pittsburgh, Pa., for appellants.

* Honorable Edward N. Cahn, United States District Judge for the Eastern District of Pennsylva-

Before STAPLETON and ALITO, Circuit Judges, and CAHN, District Judge.*

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

This Chapter 7 bankruptcy case calls for us to interpret section 522 of the Bankruptcy Code. 11 U.S.C. § 522 (1988). Section 522($l$) requires that a trustee or other party in interest file with the bankruptcy court any objections to property exemptions claimed by the debtor. In the absence of a filed objection, the property claimed as exempt by the debtor is exempt. The trustee in this case never filed an objection to the exemptions claimed by the debtor. Nevertheless, the bankruptcy court ordered the debtor and her attorneys to pay the trustee the value of part of the property the debtor had claimed as exempt. The district court affirmed. Because we conclude that such a result is unwarranted under the clear language of the Bankruptcy Code and Bankruptcy Rules, we will reverse the order of the district court.

### I.

On October 24, 1984, Emily Davis filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. Her total liabilities were $11,069.59. With her petition for bankruptcy, Davis filed the required "schedules" of her property. On Schedule B-2, on which the debtor lists personal property, Davis cited the potential proceeds of a discrimination lawsuit she had brought against TWA which was then pending on appeal. She indicated the value as "unknown." On Schedule B-4, on which a debtor claims property as exempt, Davis again identified the potential proceeds of the TWA lawsuit and listed the value as "unknown."

On November 26, 1984, Robert Taylor was appointed trustee in the bankruptcy proceeding. On January 4, 1985, Taylor conducted the statutorily required section

nia, sitting by designation.

341(a) meeting of the creditors of Davis' estate. *See* 11 U.S.C. § 341(a) (1988). Davis and her counsel attended and indicated a possible recovery of $90,000 in the case against TWA.

On January 7, 1985, Taylor mailed a letter to Wendell Freeland and Richard Kronz of Freeland & Kronz, Davis' counsel in the pending TWA suit, advising them that the net proceeds of the lawsuit were an asset of the bankruptcy estate. However, neither Taylor nor any party in interest ever filed with the court a formal objection to Davis' claimed exemptions.

On September 11, 1987, Davis executed a settlement agreement with TWA under which TWA was to pay Davis $110,000. Of this amount, $23,483.75 was allocated to Davis for "back pay or front pay," $23,483.75 to Davis for release of all alleged tort and other claims against TWA, and $63,032.50 to Freeland & Kronz for attorney's fees and costs. On September 17, 1987, TWA issued a check for $71,516.25 payable to Davis and Freeland & Kronz. This check covered the release of tort claims and the attorney's fees. On September 21, 1987, TWA issued another check, payable to Davis, for $16,614.75, which was the amount of her back and front pay after deduction for taxes. TWA also distributed $15,000 worth of travel vouchers to Freeland & Kronz pursuant to the settlement agreement.

On May 2, 1988, Taylor sent a letter to Freeland & Kronz requesting information on the status of Davis' cause of action against TWA. On May 6, 1988, Kronz informed Taylor of the settlement. On October 4, 1988, Taylor filed a complaint against Davis, Freeland & Kronz, Wendell Freeland, and Richard Kronz in the bankruptcy court to avoid post-petition transfers and to recover either the property transferred or the value of such property. On September 7, 1989, the United States Bankruptcy Court for the Western District of Pennsylvania ordered the defendants to return $23,483.75 plus interest to Taylor. 105 B.R. 288 (Bankr.W.D.Pa.1989). This represented the amount awarded in the TWA settlement for release of tort claims.

Freeland & Kronz and the individuals Wendell Freeland and Richard Kronz (hereinafter Freeland & Kronz) appealed to the district court. On September 7, 1990, the United States District Court for the Western District of Pennsylvania affirmed the bankruptcy court's order. 118 B.R. 272 (W.D.Pa.1990). Freeland & Kronz filed a notice of appeal in this court from the district court's order.

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 157. The district court had jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a). We have jurisdiction pursuant to 28 U.S.C. § 158(d) over the appeal from the order of the district court.

II.

■ The issue raised by this appeal is whether the bankruptcy court and the district court correctly interpreted section 522(*l*). Freeland & Kronz claims that the proceeds of Davis' TWA suit are exempt because Davis claimed them as exempt and no party in interest filed a timely objection to the claimed exemptions. Taylor argues that claimed exemptions that are invalid under section 522(b) cannot be considered valid solely because no party in interest filed an objection with the court. We exercise plenary review of this question of law. *Dawson v. United States*, 894 F.2d 70, 72 (3d Cir.1990).

The statutory background is not complicated. Once the bankruptcy estate is created, the debtor may exempt certain property from it pursuant to section 522. If the trustee or another party in interest objects to a claimed exemption, the bankruptcy court must determine pursuant to section 522(b)—the subsection that specifies the allowable exemptions—what property is exempt and what property remains property of the estate. When a claimed exemption is upheld by the court, the property so exempted is no longer considered property of the bankruptcy estate.

As noted, a threshold requirement must be met before the court may consider the validity of the claimed exemptions. Section 522(*l*) states: "The debtor shall file a list

of property that the debtor claims as exempt under subsection (b) of this section.... Unless a party in interest objects, the property claimed as exempt on such list is exempt." The Bankruptcy Rules, which took effect on August 1, 1983, flesh out the statutory requirements. Bankruptcy Rule 4003(b) provides: "The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment of the list unless, within such period, further time is granted by the court." Bankruptcy Rule 9006(b)(3) allows enlargement of the time period for taking action under certain bankruptcy rules, but specifically states that the court "may enlarge the time for taking action under Rule[ ] ... 4003(b) ... only to the extent and under the conditions stated in those rules."

The statute and rule establish a strict procedure for objections to claimed exemptions. Their import is clear and they admit of no exception. Unless the trustee or another party in interest objects to the debtor's claimed exemptions within the thirty-day period following the creditors' meeting or the amendment, the property claimed as exempt by the debtor is exempt. No provision of the Code provides that the failure to object is excused when the debtor's exemption claim is not advanced "in good faith," nor is there an exception provided for situations where a claimed exemption has only a questionable basis in section 522(b).

Despite the seemingly clear statutory scheme, the courts have not been unanimous in interpreting section 522(*l*). Courts have taken three different approaches to this issue. Under the first, the "literal" approach, a court will not examine the merits of a claimed exemption if an objection is not filed within the time allowed. *See, e.g., In Re Bradlow*, 119 B.R. 330 (Bankr.S.D.Fla.1990); *In re Duncan*, 107 B.R. 754 (Bankr.W.D.Okla.1988); *Doyle v. Grossman (In re Grossman)*, 80 B.R. 311 (Bankr.E.D.Pa.1987) (citing earlier decisions by bankruptcy courts reaching

the same result); *In re Payton*, 73 B.R. 31 (Bankr.W.D.Tex.1987).

Under the second approach, an objection is not necessary if the debtor's claimed exemption is invalid under section 522(b). *See, e.g., Stutterheim v. First State Bank, Alemena, KS (In re Stutterheim)*, 109 B.R. 1010 (D.Kan.1989); *In re Staniforth*, 116 B.R. 127 (Bankr.W.D.Wis.1990); *In re Velis*, 109 B.R. 64 (Bankr.D.N.J.1989), *aff'd*, 123 B.R. 497 (D.N.J.1991); *In re Bennett*, 36 B.R. 893 (Bankr.W.D.Ky.1984). The *Bennett* court set forth the equitable considerations that other courts adopting this approach have found persuasive. The court first noted that, read literally, the statute is clear that unless a party objects the debtor's claimed exemptions are exempt. But the court refused to follow this language: "we are unable to give the expected legal effect to statutory language which, standing alone, seems perfectly clear." *Bennett*, 36 B.R. at 894. If it accepted such a reading, the court declared, the result would be "exemption by declaration," and we "would revert to the law of the streets, with bare possession constituting not nine, but ten, parts of the law; orderly administration of estates would be replaced by uncertainty and constant litigation if not outright anarchy." *Id.* at 895.

The third approach occupies a middle ground between the literal reading of the statute and *Bennett*. Under this approach, a court is to examine a claimed exemption, even when no timely objection has been formally filed, to determine if there exists a "good-faith statutory basis" for the claimed exemption. If there is a good-faith basis, the exemption is allowed; if there is not a good-faith basis, the exemption is not allowed. Two federal courts of appeals have adopted this approach. *See In re Peterson*, 920 F.2d 1389 (8th Cir.1990); *Munoz v. Dembs (Matter of Dembs)*, 757 F.2d 777 (6th Cir.1985); *see also In re Indvik*, 118 B.R. 993 (Bankr.N.D.Iowa 1990).

In *Dembs*, the Sixth Circuit stated that the "clear import of [Rule 4003(b) ] and of section 522(*l*) is that objections to claimed

exemptions must be made within thirty days after the creditors' meeting or any amendment, or they are waived." *Dembs,* 757 F.2d at 780. But the court did not end its discussion there: "We do not mean by this to endorse 'exemption by declaration'; there must be a good-faith statutory basis for exemption, and in that respect we fully approve *In re Bennett." Id.* In *Peterson,* the Eighth Circuit agreed with the Sixth Circuit's analysis. Although noting that "Rule 4003(b) establishes a bright-line, thirty-day limit for objections to claimed exemptions," the court adopted the bad-faith exception to avoid the "undesirable effects of 'exemption by declaration.'" *Peterson,* 920 F.2d at 1393. Thus, the court held that, despite the absence of a timely objection, a court must examine the merits of a claimed exemption to determine if it was made in good faith.

In the instant case, both the bankruptcy court and the district court followed *Bennett.* The bankruptcy court, though noting that "plausible arguments" could be made in support of a literal reading of the statute, concluded that *Bennett* represents the "superior view." 105 B.R. at 292. The court relied on section 522(b), which states that a debtor may exempt property that is exempt under federal, state, or local law. The court stated that this language would be superfluous if section 522(*l*) were given its literal effect. *Id.* at 292–93. The bankruptcy court also cited policy reasons in support of its position. A literal reading would provide an incentive for debtors of questionable propriety to claim all of their property as exempt. *Id.* at 293. The district court agreed with the bankruptcy court's analysis and result, stating that a contrary holding would lead to "exemption by declaration." 118 B.R. at 275.

### III.

We respectfully disagree with the conclusion reached by the courts below and by the Courts of Appeals for the Sixth and Eighth Circuits. We will adhere to the clear and orderly scheme Congress enacted for property exemption determinations and hold that in the absence of an objection filed within thirty days after the section 341(a) creditors' meeting or the filing of an amendment to the exemption list, property claimed as exempt by the debtor is exempt.

### A.

Our task is "to interpret the rules neither liberally nor stingily, but only, as best we can, according to their apparent intent. Where that intent is to provide leeway, a permissive construction is the right one; where it is to be strict, a permissive construction is wrong." *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 319, 108 S.Ct. 2405, 2410, 101 L.Ed.2d 285 (1988) (Scalia, J., concurring). As we have explained earlier, the text of section 522(*l*) and Rule 4003(b) could not be much clearer in stating without exception that property claimed as exempt by the debtor is exempt unless a timely objection is filed with the court by a party in interest. That all but resolves this case, for the general rule of statutory interpretation is that where "the terms of a statute [are] unambiguous, judicial inquiry is complete except in rare and exceptional circumstances." *Demarest v. Manspeaker,* —— U.S. ——, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991). Such circumstances are present only in the "rare" case where "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters," *United States v. Ron Pair Enterprises,* Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); in other words, a result "so bizarre that Congress 'could not have intended' it." *Demarest,* 111 S.Ct. at 604 (quoting *Griffin,* 458 U.S. at 575, 102 S.Ct. at 3252).

This case is not one of the "rare" cases. The literal interpretation of section 522(*l*) and Rule 4003(b) produces a result—not allowing a party in interest to object to a debtor's claimed exemptions after the time period for doing so has elapsed—that is not "demonstrably at odds with the intentions of the drafters." The text of the statute and rule, the legislative history, and a comparison of the present statute and rule with

the statute and rule previously in effect all indicate that Congress intended a strict rule: a party in interest must file a timely objection, or the property claimed as exempt by the debtor is exempt.

The text is of course the best indication of Congress' intent, *West Virginia Univ. Hosp., Inc. v. Casey*, —— U.S. ——, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991), and the text here admits of no exceptions to the bright-line procedural rule. Furthermore, the evolution of the bankruptcy laws suggests that Congress intended to shift the burden of objection from the debtor to the other parties in interest. The pre–1978 version of the bankruptcy laws and former Bankruptcy Rule 403 required the trustee to file a report which separated allowable exemption claims from those not allowable. The burden was then on the debtor and the creditors to object within 15 days. If the debtor and creditor failed to object within 15 days, only the exemptions reported by the trustee were allowed. The Advisory Committee Note to present Rule 4003 states, "[t]he Code changes the thrust of [the former rule] by making it the burden of the debtor to list his exemptions and the burden of parties in interest to raise objections in the absence of which 'the property claimed as exempt on such list is exempt.'" Fed.R.Bankr. 4003 advisory committee's note (quoting 11 U.S.C. § 522(*l*)).

An examination of the legislative materials accompanying section 522 yields Taylor no better result. The House Report states: "Subsection (*l*) requires the debtor to file a list of property that he claims as exempt from the property of the estate. Absent an objection to the list, the property is exempted." H.R.Rep. No. 595, 95th Cong., 2d Sess. 363, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6319. Nothing in the legislative materials suggests that any exceptions to this bright-line rule were intended.

Congress intended a strict rule, and the result achieved by following the strict textual requirement is not a result "demonstrably at odds" with that intent. In fact, only by allowing an exception to the strict rule would we cause a result demonstrably at odds with the legislative intent.

### B.

The courts that have departed from the statutory language have identified a number of policy factors that, in the opinion of those courts, support a non-literal reading of the statute and rule. Before we address them, we first note that even if we were authorized to disagree with Congress on the basis of our policy views, it is not clear that we would do so here. A strong policy rationale supports the literal approach. The time limits and obligations established by section 522(*l*) and Rule 4003(b) serve the dual purposes of finality and certainty. In the bankruptcy context, the need for finality and certainty is especially acute. *See Hoos & Co. v. Dynamics Corp. of America*, 570 F.2d 433, 439 (2d Cir.1978); *Grossman*, 80 B.R. at 314–15; *see also* Scalia, *The Rule of Law as a Law of Rules*, 56 U.Chi.L.Rev. 1175, 1178–79 (1989) ("Even in simpler times uncertainty has been regarded as incompatible with the Rule of Law."). This need is reflected by Bankruptcy Rule 9006, which states that "[i]n the interest of prompt administration of bankruptcy cases certain time periods may not be extended." Fed.R.Bankr. 9006 advisory committee's note. Thus, where there is a date when the parties' rights can be finally determined—in this case, thirty days after the creditors' meeting if no objection is filed—the parties can proceed from that date knowing which property is property of the estate and which property belongs to the debtor. The debtor from that day forward can treat exempted property as his or her own and is not forced to wait until some unknown future date when the trustee or another party in interest might haul the debtor into court seeking that property.

We turn now to some of the policy considerations that other courts have cited in support of an exception to a literal interpretation of the statute. It is true, as the Eighth Circuit noted, that strict compliance with section 522(*l*) and Rule 4003(b) might in certain cases provide the debtor with an

"undeserved windfall." *Peterson*, 920 F.2d at 1393. That is true of enforcement of all procedural rules, yet the Supreme Court has not been willing to disregard a clear procedural rule simply out of an ex post concern for fairness in the individual case. For example, in *Torres*, 487 U.S. at 312, 108 S.Ct. at 2405, a case presenting more compelling circumstances than the instant case for relaxing a bright-line procedural rule, the Supreme Court decided that the failure to list one of the appellants on the notice of appeal in accordance with Civil Rule 3(c) deprived the appellate court of jurisdiction over that appellant's case. Justice Marshall stated for the Court, "We recognize that construing Rule 3(c) as a jurisdictional prerequisite leads to a harsh result in this case, but we are convinced that the harshness of our construction is 'imposed by the legislature and not by the judicial process.'" *Id.* at 318, 108 S.Ct. at 2409. Compliance with section 522(*l*) and Rule 4003(b) may lead in certain cases to an undeserved windfall for the debtor. But we, like the Supreme Court, will not disturb the clear language of the statute and rule to prevent a windfall.

The courts departing from the statutory language have also expressed concern that a literal reading would lead to a system of "exemption by declaration" whereby the debtor would have incentive to claim all property as exempt in the hope that no party in interest would object. *See, e.g., Bennett*, 36 B.R. at 895. Inserting an exception into section 522 in order to achieve this policy goal ignores two safeguards that already ensure that debtors have little or no incentive to claim all of their property as exempt. First, and most importantly, Bankruptcy Rule 9011, which is analogous to Rule 11 of the Civil Rules, forbids bad faith exemption claims and authorizes sanctions for violation of this prohibition. Rule 9011 should act as the primary deterrent against debtors engaging in bad faith exemption claims. Second, no external impediment prevents a trustee or other party in interest from filing objections to the claimed exemptions. The only hindrance is such a party's neglect. Thus, in the vast majority of cases, overzealous claims of exemptions by a debtor will serve only to induce the enmity of the other parties and of the court.

The bankruptcy court in the instant case stated that a literal reading of section 522(*l*) would render section 522(b) superfluous. 105 B.R. at 292–92. We disagree. Once an exemption has been claimed, a two-step approach applies. The threshold requirement, which is imposed by section 522(*l*) is a timely objection by a party in interest. If such an objection is filed, *then* the bankruptcy court is to decide if the claimed exemption fits into one of the categories listed in section 522(b). Section 522(b) is not rendered superfluous by a literal reading of section 522(*l*); it will be involved in almost all cases—those where a party in interest properly objects. Indeed, the bankruptcy court's reading of the statute would render section 522(*l*) meaningless.

## IV.

Absent a timely filed objection, the property claimed by a debtor as exempt under section 522 of the Bankruptcy Code is exempt. In this case, Davis the debtor claimed the potential proceeds of her then-pending lawsuit against TWA as exempt. No objection to that claimed exemption was filed with the court by any party in interest. The proceeds of the TWA suit are thus exempt. Because we find for Freeland & Kronz on this issue, we need not decide other issues it has raised. We will reverse the order of the district court.